**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STAN J. KILMARTIN, | Civil Action No. 11-7201 (FLW) |
| Plaintiff, | |
| v. | **OPINION** |
| BORO OF ISLAND HEIGHTS, et al., | |
| Defendants. | |

**APPEARANCES**:

> STAN J. KILMARTIN, #831851B
> Northern State Prison
> 168 Frontage Road
> Newark, NJ   07714
> Plaintiff *Pro Se*

> MICHAEL JOHN McKENNA
> HEIRING, GANNION and McKENNA
> 29 Hadley Avenue
> Toms River, NJ 08753
> Attorneys for Defendants Boro of Island Heights, Officer Paul Rutledge

**WOLFSON, District Judge**:

In this case, *pro se* Plaintiff Stan K. Kilmartin ("Plaintiff" or "Kilmartin") claims that the Boro of Island Heights ("Boro"), Police Officer Paul Rutledge ("Officer Rutledge") (collectively, "Defendants"), and two Island Heights transport police officers[1] violated his constitutional rights on July 18, 2011, when Officer Rutledge allegedly used excessive force against Kilmartin. Before the Court is a joint motion for summary judgment, pursuant to Federal Rules of Civil

---

[1] The transport officers are named in the Complaint as Jane and John Doe.   (Complaint, ECF No. 1.)

Procedure 56, filed by the Boro and Officer Rutledge.  For the reasons expressed below, and pursuant to Rule 78, this Court will grant summary judgment in favor of the Boro, deny the summary judgment motion of Officer Rutledge, and appoint *pro bono* counsel to represent Kilmartin.

## I.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

On July 18, 2011, while Kilmartin was confined at Ocean County Correctional Facility, he was escorted by an Island Heights police officer (Island Heights Police Officer Anthony Ringle) to an appearance before the Island Heights Municipal Court.   Helena Zalom, his then girlfriend who was also confined at the jail, was transported to the municipal court in a second vehicle, accompanied by a female transport officer (former Island Heights Police Officer Jillian Dworzanski).   Kilmartin claims that, while Kilmartin and Ms. Zalom were together in the courtroom discussing their cases, Officer Rutledge, who was the attending police officer at the courtroom, threatened to choke Kilmartin if he did not remain quiet.   Officer Rutledge disputes that he threatened Kilmartin.   After their court proceedings had concluded, Kilmartin was speaking while the two transport officers were leading him and Ms. Zalom back to their respective vehicles.   Kilmartin claims that, when he reached the door of the police vehicle and while he was handcuffed and not resisting, Officer Rutledge approached him aggressively, grabbed him by the shirt collar, and smashed him into the window of the vehicle, while repeatedly saying, "I told you not to talk to her."  (Kilmartin Deposition, ECF No. 30-7 at 56-57.)  Officer Rutledge does not dispute that Kilmartin was handcuffed when Officer Rutledge approached him outside the municipal court, but Rutledge claims that he merely grabbed Kilmartin and placed him into the vehicle.  (Rutledge Certification, ECF No. 30-12.)

As Kilmartin is proceeding *in forma pauperis*, this Court screened the Complaint for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B), prior to service.  In the screening Order, this Court dismissed Island Heights Police Department as a defendant, determined that the Complaint stated a claim under 42 U.S.C. § 1983 against the remaining defendants, *i.e.,* the Boro of Island Heights, Officer Rutledge, and the transport officers, named as Jane and John Doe, and ordered defendants to file an answer.  (ECF No. 5.)   In their Answer, Defendants Boro of Island Heights and Officer Rutledge generally denied all of the substantive allegations in the Complaint, and raised 50 separate defenses.   (Answer, ECF No. 12.)

The docket reflects that Kilmartin did not amend the Complaint to substitute the Jane and John Doe defendants with the names of the officers.   However, Kilmartin filed letters stating that he made several attempts to obtain the names of the transport officers and a copy of a surveillance video from the municipal court building and the police department for the date of the incident. For example, Kilmartin informed the Court by letter filed January 2, 2013, that he submitted interrogatories to Defendants, which included requests for the names of the transport officers. (Letter, ECF No. 18.)   By letter filed February 11, 2013, Kilmartin stated that, while he received answers to his interrogatories, the questions asking the names of the transport officers were not answered, and he would like to file a motion to obtain the names of the officers and any video surveillance for the date of the incident.  (Letter, ECF N. 23.)   Furthermore, in a letter filed February 28, 2013, Kilmartin stated that, during his deposition on February 13, 2013, he asked the Boro's attorney for the officers' names and the attorney agreed to provide them, but Kilmartin did not receive the names; Kilmartin further stated that, while the attorney provided a copy of the sign-out sheet from the jail for July 18, 2011, the signature of the officer is "unreadable" but the

officer's badge number was 261. (Letter, ECF No. 24.) Kilmartin asked in the letter if there was a way to obtain the names, as he would then "have them answer my interrogatories." *Id.* Again, in a letter filed on March 27, 2013, Kilmartin wrote to the Clerk with respect to his requests to the Boro's attorney for the names of the transport officers and the "make of the police dept. video monitoring system [which] they claim . . . is broken and does not record." (Letter, ECF No. 25.) Kilmartin asked if the video system was "wired to a hard drive from a computer" and, if so, he stated that the video of the incident should be "stored on that hard drive." *Id.* On May 2, 2013, the Magistrate Judge forwarded to Kilmartin, Defendants' responses to the discovery issues raised in Kilmartin's letters and indicated that the Court was at that time satisfied that Defendants had met their obligation regarding discovery. (Letter, ECF No. 28.) In his letter filed May 23, 2013, Kilmartin stated that he had sent a second set of interrogatories to Defendants at the end of March, but he had not received a response. (Letter, ECF No. 29.) In June 2013, Kilmartin wrote to the Clerk stating that he learned the names of the transport officers when he received Defendants' summary judgment motion, as the depositions of both transport Officers Jillian Dworzanski and Anthony Ringle were included with the filing. (Letter, ECF No. 31.)

Presently before this Court is the motion for summary judgment filed on May 24, 2013, by the Boro and Officer Rutledge on Kilmartin's excessive force claim under 42 U.S.C. § 1983. (Notice of Motion, ECF No. 30.) To support their motion, Defendants filed a brief, the certification of Officer Rutledge, and the deposition testimony of Plaintiff, Ms. Zalom, and the two transport officers, Anthony Ringle and Jillian Dworzanski, who were at the time of the incident police officers employed by the Boro of Island Heights. *Id.* In a document labeled "Rebuttal Motion Against Defendants['] Motion for Summary Judgment," and relying on his own

certification and Rule 56 Statement of Undisputed Facts, Kilmartin argued that Defendants failed to show that his constitutional rights were not violated "when there existed no threat or harm from a fully restrained plaintiff," and that "the application of force and defendant[']s performance are genuine issues for a trial to decide." (ECF No. 32 at 1-2.) In his Rule 56 Statement of Undisputed Facts, Kilmartin cited to portions of the depositions attached to Defendants' Motion. (ECF No. 32-2.) On June 14, 2013, the Boro and Officer Rutledge filed a Reply Brief, arguing in part that, pursuant to Local Civil Rule 56.1(a), this Court should deem Defendants' Statement of Undisputed Material Facts as admitted because Kilmartin did not "respond to the Statement of Undisputed Material Facts." (Reply Brief, ECF No. 34 at 3.) In response, Kilmartin filed an Amended Declaration in Opposition to Summary Judgment Motion, a Statement of Disputed Facts, and a Brief. (ECF No. 35.) Defendants then filed a letter objecting to this Court's consideration of Kilmartin's Amended Declaration on the ground that it was not timely. (Letter, ECF No. 36.)

This Court will grant summary judgment on the § 1983 excessive force claim in favor of the Boro because there is no evidence showing that the alleged use of excessive force was the result of a custom or policy of the Boro, and deny summary judgment to Officer Rutledge because there are disputed material facts as to whether excessive force was applied by Rutledge. This Court will also appoint *pro bono* counsel for Kilmartin.

## II.   DISCUSSION

A.   <u>Summary Judgment Standard</u>

Rule 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see also Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 184 (3d Cir. 2010) ("Summary judgment is appropriate if, viewing the record in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.") "An issue of material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zavala v. Wal Mart Stores Inc.,* 691 F.3d 527, 545 (3d Cir. 2012). The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

A party moving for summary judgment must "identify[]each claim or defense - or the part of each claim or defense - on which summary judgment is sought." Fed. R. Civ. P. 56(a). To carry its burden of production, the moving party must "show[] that there is no genuine dispute as to any material fact." *Id.* If the movant "fail[s] to show the absence of any disputed material fact . . , the District Court err[s] in granting summary judgment." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 148 (1970).[2] If the moving party has met its initial burden, then the nonmoving party must "set out specific facts showing a genuine issue for trial." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (quoting Fed. R. Civ. P. 56(e)(2)). "[W]hen determining whether the moving party has proven the absence of a genuine material issue of fact, the facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be

---

[2] *See Brewer v. Quaker State Oil Refining Corp*., 72 F.3d 326, 329-330 (3d Cir. 1995) ("When the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. . . . Thereafter, the nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial").

regarded as true, and the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Aman v. Cort Furniture Rental Corp.*, 85 F. 3d 1074, 1080-81 (3d Cir. 1996) (citations and internal quotation marks omitted).

B.    Defendants' Procedural Objections to Plaintiff's Filings

Local Civil Rule 56.1(a) requires a summary judgment movant to furnish a statement "which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). The Rule requires the non-movant to file "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement . . ." and permits the non-movant to file a supplemental statement of disputed material facts to substantiate the factual basis for opposition. *Id.* The Rule provides that a summary judgment motion not accompanied by a statement of material facts not in dispute "shall be dismissed," and that any material fact not disputed by the non-movant "shall be deemed undisputed for purposes of the summary judgment motion." *Id.*

Defendants contend in their Reply Brief that this Court should deem their Statement of Undisputed Material Facts as "admitted and undisputed" because Kilmartin "failed to respond" to it. (Reply Brief, ECF No. 34 at 3.) This Court rejects such a hyper technical argument for several reasons. First, Defendants have failed to comply with Local Rule 56.1(a). Defendants' Rule 56.1 Statement fails to acknowledge that the material facts relied on by Defendants are disputed by Kilmartin's deposition. By disregarding Kilmartin's deposition, Defendants mistakenly contend in their Rule 56.1 Statement that the facts concerning Rutledge's use of force

are undisputed.  Second, Defendants' Reply Brief fails to acknowledge that Kilmartin did file a Rule 56.1 Statement in his initial opposition papers.  (ECF No. 32-2.)  Although Kilmartin's Rule 56.1 Statement did not address every numbered paragraph of Defendants' Rule 56.1 Statement, Kilmartin is a *pro se* prisoner and he argued in his papers that Defendants' did not carry their burden of showing the absence of disputed material facts and that they were entitled to judgment as a matter of law.  In light of Kilmartin's *pro se* status, and Defendants' failure to comply with the rule's requirement to set forth material facts that are undisputed, this Court rejects Defendants' contention that the facts set forth in their Rule 56.1 Statement should be deemed as undisputed.  The Court's conclusion in this regard is consistent with the underlying policy that "the purpose of certain district court rules pertaining to motions is the '[f]acilitation of the court's disposition of motions, not punishment,'" *Boswell v. Eoon,* 452 F.App'x 107, 111 (3d Cir. 2011) (quoting *Lorenzo v. Griffith,* 12 F.3d 23, 28 (3d Cir. 1993)), and thus, the Third Circuit has admonished courts to "excuse[] the non-movant's failure to strictly comply with this local rule, [and] permit[] the non-movant to rely on its briefing and evidentiary submissions to dispute the movant's purportedly undisputed material facts."  *Boswell,* 452 F.App'x at 111-112.

Defendants further argue that this Court should disregard Kilmartin's opposition papers filed in response to their Reply Brief because his later submissions were out of time.  (ECF Nos. 36, 38.)  As will be explained below, in light of this Court's finding that Kilmartin's deposition creates material factual disputes, it is not necessary for this Court to rely on Kilmartin's additional out-of-time filings in order to determine that Officer Rutledge has failed to show that there are no genuine disputes as to any material facts and that he is entitled to judgment as a matter of law.  *See*

Fed. R. Civ. P. 56(a).   Accordingly, this Court has not considered untimely filings in deciding the summary judgment motion.

C.      Summary Judgment Motion of Officer Rutledge

(1) Substantive Law on Excessive Force

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 152 (1970).

The Eighth Amendment does not apply "until an inmate has been both convicted of and sentenced for his crimes."  *Bistrian v. Levi,* 696 F.3d 352, 367 (3d Cir. 2012).   An inmate "awaiting sentencing must look to either the Fifth Amendment's or the Fourteenth Amendment's Due Process Clause for protection" on an excessive force claim.  *Id.; see also Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979).   In his deposition, Kilmartin testified that Officer Rutledge assaulted him outside the municipal court shortly after Kilmartin had entered a guilty plea to the charge of violation of probation, and after Island Heights Municipal Court Judge Murray had imposed a six-month term of incarceration on that charge.   (Kilmartin Deposition, ECF No. 30-7 at pp. 38-56.)   Because Kilmartin was a sentenced inmate of Ocean County Correctional Facility at the time of the alleged assault, Defendants correctly argue that the appropriate standard is the Eighth Amendment Cruel and Unusual Punishments Clause.   *See Bistrian,* 696 F.3d at 367.

The "core judicial inquiry" in an Eighth Amendment excessive force case is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."   *Wilkins v.*

*Gaddy,* 559 U.S. 34, 37 (2010).   For example, in *Hudson v. McMillian,* 503 U.S. 1 (1992), the

Supreme Court found that corrections officers violated the Eighth Amendment when they punched

Hudson in the mouth, eyes, chest, and stomach without justification, causing bruising and swelling

of his face, loosened teeth, and a cracked partial dental plate.   *Id.* at 4.   The Court emphasized

that "[w]hen prison officials maliciously and sadistically use force to cause harm," "contemporary

standards of decency always are violated . . . whether or not significant injury is evident."   *Id.* at 9.

Similarly, in *Wilkins v. Gaddy*, the Supreme Court reversed the dismissal of Wilkins' excessive

force claim where the dismissal was based on the *de minimis* nature of injury.   In that complaint,

Wilkins alleged that, without provocation, corrections officer Gaddy "snatched [Wilkins] off the

ground and slammed him onto the concrete floor," and then "proceeded to punch, kick, knee and

choke [Wilkins] until another officer had to physically remove him from [Wilkins.]"   *Wilkins,*

559 U.S. at 35.   The Court noted that the Fourth Circuit had improperly read *Hudson* as merely

"lower[ing] the injury threshold for excessive force claims from 'significant' to 'non-*de minimis*' –

whatever those ill-defined terms might mean."   *Id.* at 39.   The Court explained that *Hudson*

"aimed to shift the 'core judicial inquiry' from the extent of the injury to the nature of the force –

specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause

harm.'"   *Id.* (quoting *Hudson,* 503 U.S. at 7.)

Several factors are considered in determining whether the use of force violates the Eighth

Amendment:

> [T]he extent of injury suffered by an inmate is one factor that may suggest whether
> the use of force could plausibly have been thought necessary in a particular
> situation, or instead evinced such wantonness with respect to the unjustified
> infliction of harm as is tantamount to a knowing willingness that it occur. In
> determining whether the use of force was wanton and unnecessary, it may also be
> proper to evaluate the need for application of force, the relationship between that
> need and the amount of force used, the threat reasonably perceived by the

responsible officials, and any efforts made to temper the severity of a forceful response. The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

*Hudson*, 503 U.S. at 7 (citations and internal quotation marks omitted); *accord Monroe v. Phelps,* 520 F.App'x 67, 70 (3d Cir. 2013).

(2) Material Facts Presented

Here, Officer Rutledge filed his own certification in support of his motion for summary judgment. He avers as follows: on July 18, 2011, Officer Rutledge was on duty inside the courtroom of the Island Heights Municipal Court; Kilmartin and Helena Zalom were escorted into the courtroom by Officer Ringle and Officer Dworzanski, placed in chairs, and instructed not to speak; Kilmartin leaned over and spoke to Zalom several times; Rutledge again "instructed the plaintiff to keep quiet;" when the proceeding had concluded and the two transport officers were escorting Kilmartin and Zalom to the police vehicles, "the plaintiff kept talking with Ms. Zalom;" Police Officer Dworzanski asked Officer Ringle to watch Zalom while she went around the vehicle to unlock the doors; Officer Ringle asked Officer Rutledge to "hold on to the plaintiff;" as Kilmartin started to walk toward Officer Dworzanski's vehicle and in the direction of Zalom, Rutledge "grabbed the plaintiff" and asked him where he was going; Kilmartin responded by saying "F--- you – I want to talk to Ms. Zalom before you guys take her away;" Officer Rutledge "then walked the plaintiff over to the second police vehicle and placed him in the rear passenger seat." (Rutledge Certification, ECF No. 30-12 at 2-3.)

With his motion for summary judgment, Rutledge also submitted the depositions of Stan Kilmartin, Helena Zalom, Anthony Ringle, and Jillian Dworzanski.[3] (ECF Nos. 30-7, 30-8, 30-10, 30-11, 30-13, 30-14.)   Kilmartin's version of events is dramatically different from Officer Rutledge's version, and the testimony of the other deponents differs in some respects, as well. Kilmartin testified that he had been "together" with Zalom from 1990 to 1992, and then from 2003 through the date of the incident on July 18, 2011.   (ECF No. 30-7 at 32.)   He testified that he and Zalom were arrested together about two weeks prior to July 18, 2011, and they were confined in different sections of the Ocean County Correctional Facility.   He averred that on July 18, 2011, he was called to the booking area of the jail, where he saw Zalom and two Island Heights police officers, who proceeded to escort them in separate vehicles to the Island Heights Municipal Court. He testified that the transport officers[4] allowed Kilmartin to speak with Zalom while they walked from the vehicles into the courtroom.   According to Kilmartin, he and Zalom were discussing whether or not to plead guilty to the violation of probation charges to be heard by Municipal Court Judge Murray, and Officer Rutledge was "standing against the wall behind us."   *Id.* at 42. Kilmartin testified that, during the five to ten minute period before their cases were called, Officer Rutledge told Kilmartin to "shut the f--- up before I choke you."   *Id.* at 45.   According to Kilmartin, Judge Murray called their cases together, Kilmartin and Zalom each pled guilty to violation of probation, Judge Murray imposed a six-month sentence on each defendant, and the transport officers escorted Kilmartin and Zalom out of the courtroom and out of the building.

---

[3] This Court notes that Kilmartin, who was incarcerated, was not present at the depositions of Ms. Zalom, Officer Ringle, and Officer Dworzanski, and he may not have been given notice of the depositions.   (ECF Nos. 30-10, 30-11, 30-13, 30-14.)

[4] Island Heights Police Officer Ringle escorted Kilmartin in one vehicle, and Island Heights Police Officer Dworzanski escorted Zalom in a separate vehicle.   (Rutledge Certification, ECF No. 30-12.)

Kilmartin testified that, as the transport officers and prisoners were walking back to the vehicles, all of them were talking. Kilmartin avers that, when he reached the door of the vehicle and while he was handcuffed, Officer Rutledge approached him in an "aggressive" way, "grabbed" him by the neck of the shirt, and "smashed [him] into the police car like ten to 20 times," while Rutledge repeatedly stated, "I told you not to talk to her." *Id.* at 56-57. Later in the deposition, Kilmartin emphasized that Rutledge did not "push" him, but "slammed" him back and forth, causing his head to repeatedly crash into the window of the vehicle's door. (ECF No. 30-8 at 9.)

In her deposition, after referring to the incident between Officer Rutledge and Kilmartin as a "conflict" (ECF No. 30-13 at 64) and a "scuffle" (ECF No. 30-14 at 29), Ms. Zalom testified that Officer Rutledge was "screaming" as he charged toward Plaintiff outside the courthouse. (ECF No. 30-14 at 34.) She initially described the incident as follows:

> It was some kind of contact that [Officer Rutledge] made with [Kilmartin]. Like, he charged out of the building, yelling. Ran up to him. The other officer, like, had Stan, you know . . . holding – yeah . . . kind of, you know, like, because when the inmates are walking in shackles and stuff, they're nearby in case you would trip or fall. You know what I mean? To protect . . . . So, he just, like, ran over to the both of them. Because they were standing right next to each . . . other. Rutledge . . . And it was just like, you know, I can't say, like, what type of contact, but there was contact of some kind made.

(Zalom Deposition, ECF No. 30-14 at 41-42.)[5]

In response to the question, "And you think that Officer Rutledge was the one who initiated the contact?" Ms. Zalom replied "Yes." *Id.* at 42. Later in the deposition, Ms. Zalom testified that "[t]here was some kind of physicalness" [sic] and, although Officer Rutledge was between Zalom and Kilmartin, she saw "movement of some kind," "like a jostle." *Id.* at 52, 53. Zalom further testified that Rutledge is bigger than Plaintiff and Plaintiff was not resisting, and that

---

[5] The ellipsis marks in the quoted testimony indicate the points at which Defendants' attorney appears to have interrupted Ms. Zalom.

Plaintiff "wasn't still. Like, he was moved. Like, his body, like, whatever it was, he was thrown. I don't know what the word is." *Id.* at 53-54. Zalom further testified (consistent with the testimony of Officer Ringle) that the escort officer "was trying to, like, stop this from getting even worse." *Id.* at 55-56. Although Defendants argue in their brief that Zalom did not see any punches, kicks, or shoves, and that Zalom's testimony "clearly indicates that defendant Rutledge did nothing more than lean his body against the plaintiff's body as the police officers were preparing to place the plaintiff into the rear of Officer Ringle's police vehicle," (Brief, ECF No. 30-4 at 18), that is not accurate; Zalom later testified regarding whether she saw any punches thrown by Officer Rutledge, as follows: "I don't know what it was. I don't want to say definitively that I didn't see a punch because it could have been a punch. I don't know. I just saw the back of his body and movement. I can't say that it wasn't a punch. I won't say that it was a punch but I can't say definitely - - -" *Id.* at 65-66.

Finally, Zalom, who has been estranged from Plaintiff since the date of the incident, testified that "it was shockingly, the level to which [Officer Rutledge] was upset was abnormal," (ECF No. 30-14 at 3), and that she was concerned enough that she strained to watch Plaintiff get into the vehicle after the incident, explaining that she "wanted to make sure that nothing else happened." *Id.* at 20.

In his deposition, Officer Ringle described the incident in this way:

When Officer Rutledge – when I was in the middle next to Helena, watching Helena, and he was watching Stan, he kept on – Stan kept on talking. So, he told him to be quiet. And Officer Rutledge leaned Stan up against the vehicle and told him to be quiet. And then it was kind of like a – they're like arguing back and forth. And I – when I saw that, I told Officer Rutledge to stop; and Stan to stop. And Officer Rutledge did stop. And we then placed Stan in the vehicle.

(Ringle Deposition, ECF No. 30-10 at 37-38.)  Officer Dworzanski testified in her deposition that she did not see anything that might have occurred between Officer Rutledge and Kilmartin because she was walking around the police pick-up truck, unlocking the door by hand, and moving a plastic bin in the back seat.  (Dworzanski Deposition, ECF No. 30-11 at 36-38.)  She testified that, while she was performing these tasks, "[a]ll I heard was him and her talking again.  And I heard an officer say, guys, be quiet, you know.  And that was it.  Next thing I knew, I walked back, and the car door was opened for Officer Ringle and [Officer Rutledge] had Mr. – had . . . Kilmartin and was placing him in the car."  *Id.* at 38.  The three witnesses deposed do not fully support either party's version of the events.

(3) Legal Analysis

Officer Rutledge argues that he is entitled to summary judgment on Kilmartin's excessive force claim because "the sworn testimony of the witnesses, including that of [Kilmartin's] long-time girlfriend, clearly indicates that defendant Rutledge did nothing more than lean his body against the plaintiff's body as the police officers were preparing to place the plaintiff into the rear of Officer's Ringle's police vehicle."  (Summary Judgment Brief, ECF No. 30-4 at 18.) Rutledge contends that, "[i]n assisting the other officers in the performance of a very minor and routine task, that of placing the plaintiff into the rear of Officer Ringle's police vehicle, defendant Rutledge cannot possibly be said to have used force that is 'repugnant to the conscience of mankind.'"  *Id.* at p. 19 (quoting *Hudson,* 503 U.S. at 9).

Significantly, Officer Rutledge ignores Kilmartin's sworn testimony of the events.[6]  As explained above, Kilmartin testified at his deposition that, when he reached the door of the vehicle

_____

[6]  A party asserting that a fact "is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions . . ."  Fed. R. Civ. P. 56(c)(1) (A).

and while he was handcuffed and not resisting, Officer Rutledge approached him in an "aggressive" way, "grabbed" him by the neck of the shirt, and "smashed [him] into the police car like ten to 20 times," while Officer Rutledge repeatedly stated, "I told you not to talk to her." (Kilmartin deposition, ECF No. 30-7 at 56-57.)   Later in the deposition, Kilmartin objected to the attorney's leading question that Officer Rutledge pushed Kilmartin, and emphasized that Officer Rutledge repeatedly slammed him back and forth, causing Plaintiff's head to crash into the window of the vehicle's door.   (ECF No. 30-8 at 9.)[7]   In addition, Kilmartin testified that he suffered injuries to his upper back and head from the incident.   *Id.* at 52.

Viewing the evidence in the light most favorable to Kilmartin, which this Court is required to do on Defendants' summary judgment motion, this Court finds that Kilmartin's deposition, as well as the deposition of Zalom, create disputed issues of material fact with respect to the core judicial inquiry of whether the force used was necessary or wanton.   It is not disputed that Kilmartin was handcuffed and not resisting when Officer Rutledge approached Plaintiff and allegedly grabbed him by the shirt collar and repeatedly slammed his head into the side window of the police vehicle.   Accordingly, Kilmartin posed no threat at the time that Officer Rutledge allegedly used force on Plaintiff.   And, although there is no indication that Kilmartin suffered serious injury or required medical care, he testified that his head and upper body were injured; in any event, the absence of serious injury is not dispositive of whether the force used was necessary

---

An affidavit or deposition testimony "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."   Fed. R. Civ. P. 56(c)(4).

[7] Kilmartin testified:   "He didn't push me. He slams me . . . back and forth, you know, front and back . . . so, my back and head are crashing into the window of the door, because it's an SUV, you know, I'd say between ten to 20 times."   (Kilmartin Deposition, ECF No. 30-8 at 9.)   The Court notes that the ellipsis marks indicate points where the attorney for Defendants appears to have interrupted Kilmartin.

or wanton. *See Hudson,* 503 U.S. at 7 ("[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur . . . The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.")

In addition, contrary to Defendants' characterization of Zalom's testimony, her testimony contradicts Officer Rutledge's averment that he used no force, and supports this Court's determination that there are disputed factual issues regarding whether the force used by Officer Rutledge against Kilmartin, if any, violated the Eighth Amendment standard. As set forth above, Officer Rutledge averred that, in response to Officer Ringle's request to "hold on" to Kilmartin, Officer Rutledge "grabbed" Kilmartin, asked him where he was going, "walked the plaintiff over to the second police vehicle and placed him in the rear passenger seat." (Rutledge Certification, ECF No. 30-12 at 2-3.) But, Zalom testified that she was shocked by how upset Officer Rutledge was, that Plaintiff was not resisting when Officer Rutledge initiated physical contact with Kilmartin, and that she saw movement of some kind, like Kilmartin's body "was thrown." (Zalom Deposition, ECF No. 30-14 at 54.) Zalom further testified that she could not "say definitively that [she] didn't see a punch because it could have been a punch." *Id.* at 65.

Officer Rutledge further argues that the force used was *de minimis* and, accordingly, this *de minimis* use of force did not violate the Eighth Amendment. To rule in favor of Officer Rutledge, this Court would necessarily have to accept Officer Rutledge's version of the facts; however, this Court has already found that there are disputed issues of material fact. And, viewing the evidence in the light most favorable to Kilmartin, this Court cannot find as a matter of law that Rutledge did

not inflict cruel and unusual punishment.   Such a holding would be contrary to *Wilkins v. Gaddy, supra,* in which the Supreme Court determined that, where force was applied "maliciously and sadistically to cause harm," it is actionable under the Eighth Amendment, provided the force was "nontrivial."   *Wilkins,* 559 U.S. at 39.   As the allegations made by Kilmartin in this case are quite similar to the facts in *Wilkins*, this Court rejects the notion that the use of force described by Kilmartin, where Kilmartin was handcuffed and offering no resistance, was too trivial to violate the Eighth Amendment.   *See also Giles v. Kearney,* 571 F.3d 318, 321 (3d Cir. 2009) ("Because Giles testified that he was kicked and punched while fully restrained on the ground, after he ceased to resist, Giles alleges conduct in violation of his Eighth Amendment rights that a reasonable officer would have known was a violation under the circumstances, and we will reverse the District Court's grant of summary judgment . . ."); *Matthews v. Villella,* 381 F.App'x 137, 139 (3d Cir. 2010) ("We find that Matthews has stated a plausible [Eighth Amendment] claim for relief by alleging that [officer] Villella acted wantonly and maliciously by striking his handcuffed hands with a billy club, without any apparent provocation.")   Moreover, the testimony of Zalom and the officers on the scene, which, in the absence of a video, are critical, do not fully support Defendants' version of the facts.   Because there are genuine issues of material fact as to whether Officer Rutledge's use of force was malicious, unnecessary and nontrivial, contrary to the Eighth Amendment, this Court will deny Officer Rutledge's motion for summary judgment.   *Id.*

D.      Summary Judgment Motion of Boro of Island Heights

(1) Substantive Law of Municipal Liability

A municipality, such as the Boro of Island Heights, cannot be found liable under 42 U.S.C. § 1983 simply because it employs a wrongdoer.   *See Monell v. New York City Dept. of Soc. Servs.,*

436 U.S. 658, 691-92 (1978); *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003). In order for a municipal entity to be found liable under § 1983, the plaintiff "must identify a custom or policy," "specify what exactly that custom or policy was," *McTernan v. City of York, PA*, 564 F. 3d 636, 658 (3d Cir. 2009), and specify facts showing a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *Jiminez v. All American Rathskeller, Inc*., 503 F. 3d 247, 249 (3d Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). [8]

(2) Material Facts Presented and Legal Analysis

Here, although Kilmartin claims that Officer Rutledge used excessive force and that the other officers failed to intervene, he has presented no evidence in his deposition or in response to the summary judgment motion suggesting that a custom or policy of the Boro caused the alleged violation of his Eighth Amendment rights. It is settled that "a single incident of police misbehavior by a single policeman is insufficient as sole support for an inference that a . . . policy or custom caused the incident." *Brown v. City of Pittsburgh*, 586 F. 3d 263, 292 (3d Cir. 2009) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 832 (1985) (Brennan, J., concurring)). As the evidence suggests no more than a single incident of excessive force by Officer Rutledge, the claim against the Boro fails and this Court will grant summary judgment on the Eighth Amendment claim excessive force claim in favor of the Boro. *See Petersen v. City of Uniontown*, 441 F.App'x 62, 64 (3d Cir. 2011).

E. <u>Appointment of Counsel</u>

---

[8] A policy is made when a decisionmaker possessing final authority to establish policy with respect to the action issues a policy or edict. *See Natale,* 318 F.3d at 584. A custom is an act that has not been formally approved by the policymaker but that is so widespread to have the force of a rule or policy. *Id.*

This Court notes that, early in the litigation, Kilmartin asked this Court to appoint *pro bono* counsel, and that the Magistrate Judge denied the application without prejudice. (ECF Nos. 8, 9.) In addition, although Kilmartin appears to have sought the names of the transport officers in his interrogatories to Defendants, to have repeatedly asked the Clerk for assistance in obtaining the names, and to have asked Defendants' attorney for the names, Kilmartin has not amended the Complaint to substitute the Jane and John Doe defendants with the names of the officers after apparently having those names revealed to him when he received Defendants' summary judgment motion. *See* Kilmartin's Letters, ECF Nos. 24, 25, 31. Similarly, Kilmartin apparently attempted through discovery to determine the existence of video surveillance of the area outside the municipal court, which would have captured the incident. *See, e.g.,* Kilmartin's Letters, ECF Nos. 23, 25. Those efforts have been unsuccessful.

Once a court finds that an indigent party's case has arguable merit, in deciding to appoint counsel, the court should "consider a number of additional factors including: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses." *Cuevas v. United States*, 422 F.App'x. 142, 145 (3d Cir. 2011) (citing *Tabron v. Grace*, 6 F.3d 147, 155-57 (3d Cir. 1993)). Given the possible need for additional discovery and factual development, and the fact that this case will turn on credibility determinations, this Court finds that the appointment of *pro bono* counsel for Kilmartin, pursuant to 28 U.S.C. § 1915(e)(1), is necessary.

### III.   CONCLUSION

This Court grants summary judgment in favor of the Boro of Island Heights, denies summary judgment of Officer Rutledge, and appoints *pro bono* counsel for Plaintiff.


          /s/ Freda L. Wolfson          
**FREDA L. WOLFSON, U.S.D.J.**

DATED:     December 16 , 2013